Samuel A. Schwartz
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone:     (702) 385-5544
Facsimile:     (702) 442-9887

Kevin W. Kirsch (*pro hac vice* pending)
Andrew E. Samuels (*pro hac vice* pending)
Mark S. Einsiedel (*pro hac vice* pending)
Naomi Price (*pro hac vice* pending)
**Baker & Hostetler LLP**
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone:     614.228.1541

Kevin P. Flynn (*pro hac vice* pending)
**Baker & Hostetler LLP**
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Telephone:     513.929.3400

Jeffrey J. Lyons (*pro hac vice* pending)
**Baker & Hostetler LLP**
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
Telephone:     302.407.4222

*Attorneys for Plaintiffs*
*Interblock d.o.o. and Interblock USA, L.C.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERBLOCK D.O.O. and INTERBLOCK USA, L.C., | Case No.: |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MERKUR GAMING US, LLC and SPINTEC D.O.O., | |
| Defendants. | |

/ / /

/ / /

1

Plaintiffs Interblock d.o.o. and Interblock USA, L.C. (collectively, "Interblock") hereby submit their Verified Complaint for patent infringement against Merkur Gaming US, LLC ("Merkur") and SPINTEC d.o.o. ("Spintec") (Merkur and Spintec, collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.      This is an action for injunctive relief for Merkur's and Spintec's infringement of U.S. Patent No. RE46,738 ("'738 Patent") and U.S. Patent No. 11,325,025 ("'025 Patent"). Interblock seeks a temporary restraining order and a preliminary injunction prohibiting any commercial exploitation, manufacture, use, or importation of Merkur's and Spintec's infringing dice electronic table games in the United States. Interblock further seeks damages for Merkur's and Spintec's infringement that has already occurred.

2.      Interblock is a world-renowned and recognized company in the field of the development of electronic gaming devices, with over 34 years of experience. Casino operators around the world recognize Interblock as a leading developer and supplier of luxury gaming products. Interblock's gaming devices raise industry standards with their innovation and sophistication, providing its users with an exceptional experience. Interblock has been building its reputation, market recognition, and customer trust in its quality products and services for more than 34 years.

3.      Interblock has built its reputation through hard work and substantial financial investments of capital, developing award-winning, cutting-edge gaming products. Interblock has developed new takes on traditional table games, such as craps, incorporating advanced gaming technology to create a transformative new gaming experience with the familiarity of traditional table games. Interblock's unique portfolio of electronic automated and semi-automated gaming machines and video gaming devices provides superior solutions for casinos, arcades, gaming halls, and gaming salons, offering guests a unique and unforgettable gaming experience. The Interblock brand is

recognized as synonymous with high-quality gaming solutions throughout the gaming world.

4.    Interblock is the leading supplier of electronic gaming devices worldwide. Interblock provides its customers with the highest level of innovation, service, technology, and products that enable competitiveness in a changing market. Achieving this requires extraordinary effort, financial resources, investment in personnel, technology, and intellectual property.

5.    Interblock's exceptional product development and innovation place it at the forefront of the gaming industry. Over the years, together with its subsidiaries, it has introduced numerous revolutionary products, such as the Diamond generation of games, the Organic generation of gaming devices, Hologram Gaming Lounge, Stadium, Smart Pit, Standalone, Stadium and Pulse Arena, Universal Cabinet, ARUZE Legacy ETGs, and many others. As of this filing, Interblock owns 363 issued U.S. patents, secured allowance on nine additional patent applications, and owns 244 other pending patent applications.

6.    Interblock makes, uses, sells, and offers for sale innovative dice Electronic Table Games ("ETGs") including, e.g., Shoot to Win Craps, Dragon Sic-Bo, Universal Cabinet Craps, Universal Cabinet Crapless Craps, and Universal Cabinet Sic-Bo.





7.     For example, Interblock's Shoot to Win Craps is a novel electronic adaptation of the game of craps. The electronic adaptation offers players an intuitive and user-friendly way to place bets and roll the dice. This electronic version simplifies the betting process and provides a dynamic environment. Innovative software enables improved dice detection and advanced security with new dice. The latest camera system adds top-notch support. Each gaming terminal includes a shooter button for a user to throw the dice, creating a seamless gaming experience. Software solutions allow gameplay to be tailored to player preferences with flexible settings for odds, commissions, simultaneous bets, jackpot features, and more. Innovative industrial design brings all of this together and enables improved configuration, seamlessly integrated.

8.     As another example, Interblock's Dragon Sic-Bo is a novel electronic adaptation of the dice game Sic-Bo. The electronic adaptation offers a variety of betting options, making this product attractive and visually impressive for players. The innovative industrial design with padded panels visible from all sides displays the game history and flying dragons, while the round sign visible from all sides allows the game history and flying dragons to be displayed. The number of stations can be changed according to

customer requirements.

9.    Interblock holds the dominant market position for ETG dice games through its sales of products covered by the '738 Patent and the '025 Patent, including, e.g., Shoot to Win Craps, Dragon Sic-Bo, Universal Cabinet Craps, Universal Cabinet Crapless Craps, and Universal Cabinet Sic-Bo.

10.    Interblock is now seriously threatened by the actions of Defendants. In the wake of Interblock's success in the ETG dice game market, Merkur and Spintec plan to release a highly similar, infringing line of dice games. In the following images, Interblock's dice ETGs are shown on the left, while Merkur's and Spintec's infringing dice ETGs are shown on the right.

 

| Interblock's Patented Craps Dice ETG | Merkur's and Spintec's Infringing Craps Dice ETG |

 

| Interblock's Patented Sic-Bo Dice ETG | Merkur's and Spintec's Infringing Sic-Bo Dice ETG |
|---|---|

11.    On October 4, 2024, Merkur and Spintec jointly announced a "long-term strategic partnership" which "aims to tap into new gaming markets." **Exhibit 1** is a true and correct copy of the announcement.

12.    In or around May 2025, Merkur secured a license to manufacture and distribute gaming products in the state of Nevada. The press release also announced the Nevada Gaming Commission's approval of Merkur's acquisition of its "trusted strategic partner," Gaming Arts LLC. **Exhibit 2** is a true and correct copy of the press release.

13.    On August 21, 2025, Merkur announced its forthcoming appearance at the 2025 Las Vegas Global Gaming Expo ("G2E") from October 7–9, 2025. Merkur highlighted that its "strategic partner and Slovenian ETG [electronic table game] specialist Spintec" will be sharing Merkur's exhibition space. **Exhibit 3** is a true and correct copy of the announcement.

14.    The website for the 2025 Las Vegas G2E indicates that Merkur and Spintec will in fact be sharing exhibition space and jointly exhibiting gaming products. **Exhibit 4** is a true and correct copy of the website for Merkur's exhibitor details at the 2025 Las

Vegas G2E.

15.     The 2025 Las Vegas G2E will be held in Las Vegas, Nevada, on October 6–9, 2025. G2E is expected to have more than 400 exhibitors and over 25,000 attendees. Interblock will be exhibiting its products at G2E, and Defendants announced they intend to exhibit their products. A Spintec social-media post advertises the Spintec-Merkur booth where attendees can see the infringing Charisma ETG: "Come visit us and our partner MERKUR GAMING at Booth #3353 at The Venetian Expo, Oct 7–9." **Exhibit 8** is a true and correct copy of this social media post. The Las Vegas G2E is the most significant exhibition and sales event in the gaming industry. Representatives from about 750-800 casinos globally, those casinos representing over 95% of Interblock's revenue, will visit Interblock's booth at the 2025 Las Vegas G2E. New casinos not currently customers of Interblock, and representatives of customers in new markets, will visit Interblock's and, on information and belief, Spintec's and Merkur's booths. Exclusivity in the automated dice ETG technologies covered by the '738 Patent and '025 Patent is critical to Interblock's strategic operations. Products embodying the patented technologies, including Universal Cabinet Craps, Universal Cabinet Crapless Craps, Universal Cabinet Sic-Bo, Dragon Sic-Bo, and the Shoot-to-Win ETGs are Interblock's highest-earning ETGs. For Interblock and much of the gaming industry, the Las Vegas G2E annually is the event where customer and distributor deals are made. As advertised on G2E's website, "G2E is the catalyst for gaming – fostering innovation and driving growth by convening the global industry in one place to get business done."

16.     Spintec and Merkur make, use, sell, offer for sale, and/or import into the United States automated dice games, including craps and sic-bo, under the Charisma line of products. Defendants' automated dice games feature a dice generator that automatically throws real dice in a clear enclosure.

17.     Defendants' automated dice games, e.g., craps and sic-bo on the Charisma ETG, infringe one or more claims of the '738 Patent and the '025 Patent.

18.     Defendants have begun attempts to sell infringing games, including Defendants' automated craps and sic-bo machines, to casinos across the United States.

19.     Defendants have recently begun promoting their automated dice games heavily on social media and through public relations campaigns, attempting to generate significant buzz for their automated craps and sic-bo machines in the gaming industry.

20.     Defendants have recently approached game distributors and casino operators, pitching their automated dice games as lower-cost alternatives to Interblock's highly successful automated dice games. Defendants have further indicated to casino operators that they will be officially launching their automated dice game products at the 2025 Las Vegas G2E. On information and belief, Defendants intend to feature Defendants' automated dice games, particularly under the Charisma product line, in Merkur's exhibition space at the 2025 Las Vegas G2E. A September 9, 2025 social media post by Spintec offers potential customers to "Meet charisma at G2E show in Las Vegas Booth # 3353 October 7-9, 2025" along with the hashtag #areyoufeelingcharismatic, a picture of which is shown below. The planned exhibitions of the infringing dice ETGs at the 2025 Las Vegas G2E where nearly the entire gaming industry is represented and nearly all of Interblock's customers will be present, gravely threatens Interblock's customer base and business strategies focused on growth in automated dice ETGs embodying patented technologies.



21.    Advertising thus confirms Defendants' intention to formally launch and demonstrate the infringing Charisma line of ETGs at the 2025 Las Vegas G2E. Allowing Defendants to exhibit their infringing ETGs as planned at the 2025 Las Vegas G2E will cause Interblock significant, irreparable harm.

22.    Defendants are attempting to directly compete with Interblock's automated dice games, a market in which Interblock is well established in both numbers of sales and reputation as an innovator and reliable company. Interblock conservatively estimates that it maintains a 90% or greater market share with respect to ETG dice games in the U.S.

23.    Through its hard work and innovation, Interblock has released a complete

lineup of highly successful dice games, including Diamond Sic-Bo, Diamond Craps, Diamond Crapless Craps, Diamond Easy Craps, Dragon Sic-Bo, Shoot to Win Craps, Diamond Pick to Win Craps, Interblock Stadium, Interblock Pulse Arena, Universal Cabinet Craps, Universal Cabinet Crapless Craps, Universal Cabinet Easy Craps, and Universal Sic-Bo.

24.    Interblock will have no control over the quality of Defendants' infringing games. If Defendants are allowed to exhibit their infringing ETG dice games at the 2025 Las Vegas G2E and commercially exploit their infringing products, customers may purchase Defendants' infringing games and associate them with Interblock. Interblock, the industry leader, undertakes extensive efforts to distribute products using the best manufacturing practices, quality control, customer service, and warranties. Interblock has no reason to believe that Defendants will provide the same level of quality. If any of Defendants' infringing games fail, the customer may associate the poor quality and issues with Interblock, further harming Interblock's industry-leader reputation and diminishing the goodwill Interblock has garnered.

25.    Recent Spintec advertising confirms that irreparable harm to Interblock is imminent. On LinkedIn, Spintec's account posted numerous stacked, wooden crates in what appears to be an airport, stating: "Ready for takeoff. Packed with power, heading straight across the ocean, U.S. casinos, get ready: #Charisma is coming." The Spintec advertising confirms that the U.S. market is about to be flooded with infringing Charisma ETGs. **Exhibit 7** is a true and correct printout of the LinkedIn post, which is copied below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



**PARTIES**

24    26.    Interblock d.o.o. is a Slovenian limited liability company located at

25  Gorenjska cesta 23, 1234 Menges, Slovenia.

26    27.    Interblock USA, L.C. is a subsidiary of Interblock d.o.o. that distributes

27  Interblock's ETG dice games in the United States. Interblock USA, L.C. is a Nevada

28

limited liability company headquartered at 6900 S. Decatur Blvd., Suite 100, Las Vegas, NV 89118.

28.    Merkur is a Nevada limited liability company. Its Manager is Jochen Clemens, whose business address is Merkur-Allee, 1-15, Espelkamp, 32339, Germany. Merkur is a subsidiary of the Merkur Group, located in Espelkamp, Germany.

29.    Spintec is a Slovenian limited liability company located at Volčja Draga 43D, 5293 Volčja Draga, Slovenia.

## JURISDICTION, VENUE, AND JOINDER

30.    This is an action arising under the Patent Act and specifically for patent infringement under 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

31.    This Court has general jurisdiction over Merkur because Merkur was formed in Nevada. This Court also has specific personal jurisdiction over Merkur because Merkur has availed itself of the privileges of transacting business in the State of Nevada, secured a license from the Nevada Gaming Commission to manufacture and distribute gaming devices, and has purchased exhibition space at the 2025 Las Vegas G2E.

32.    This Court has personal jurisdiction over Spintec because Spintec has availed itself of the privileges of transacting business in the State of Nevada. At a minimum, Spintec was exhibiting gaming products at the 2024 Las Vegas G2E in October 2024 from Merkur's exhibition space. Moreover, on information and belief, Spintec will be exhibiting and soliciting sales for its infringing automated dice games at the 2025 Las Vegas G2E, which unless enjoined will constitute patent infringement occurring in the State of Nevada.

33.    Both Merkur and Spintec have sufficient minimum contacts with Nevada because their planned business activities directed into Nevada, including at the 2025 Las Vegas G2E, will result in patent infringement, giving rise to the causes of action asserted in this Complaint. Because of these minimum contacts, the exercise of jurisdiction

satisfies due process. Nevada's long-arm statute allows the exercise of jurisdiction in a manner not inconsistent with the Constitution.

34.     Venue is proper as to Merkur under 28 U.S.C. § 1400(b) because Merkur resides in this district.

35.     28 U.S.C. § 1391 governs venue applied to foreign defendants including Spintec. Under 28 U.S.C. § 1391(b), venue is proper as to Spintec in this district.

36.     Joinder of Merkur and Spintec is appropriate. Merkur and Spintec announced plans to jointly exhibit their products at the 2025 Las Vegas G2E and within the last year announced a "long-term strategic partnership." Merkur recently secured a Nevada gaming license and has since been selling Spintec games. Merkur and Spintec have also recently solicited Interblock's customers (both casino operators and gaming distributors), indicating a forthcoming automated dice game launch and attempting to undercut Interblock's pricing on automated dice games. Further, on information and belief, the 2025 Las Vegas G2E (via Merkur's and Spintec's shared exhibition space) will serve as the formal launch of the infringing Charisma automated dice games. Accordingly, the claims against Merkur and Spintec involve the same infringing products, the same set of transactions and occurrences, and Merkur's and Spintec's efforts to advance their long-term strategic partnership through offering new products that infringe Interblock's patent rights. Questions of fact common to Merkur and Spintec will arise in this action.

## THE '738 PATENT

37.     On February 27, 2018, the U.S. Patent and Trademark Office duly and legally reissued the '738 Patent, titled "Gaming Machine with Dice Shaking Unit Performing Dice Shaking Motions with Varying Amplitudes." A true and correct copy of the '738 Patent is attached as **Exhibit 5**.

38.     Interblock d.o.o. owns the '738 Patent. Interblock USA, L.C. is the exclusive licensee of the '738 Patent.

39.     Interblock makes, uses, sells, and/or offers for sale ETG dice games

including, e.g., Shoot to Win Craps and Dragon Sic-Bo. These products are each covered by at least one claim of the '738 Patent.

40.    The '738 Patent is valid, enforceable, and claims patentable subject matter.

41.    The '738 Patent is directed to improved gaming systems implementing dice, such as craps and sic-bo, and related methods. Systems according to the '738 Patent enable games such as craps and sic-bo to be played without dealers while achieving sufficient durability and randomness and provide an improved user experience.

<strong>THE '025 PATENT</strong>

42.    On May 10, 2022, the U.S. Patent and Trademark Office duly and legally issued the '025 Patent, titled "Methods for Controlling Movement of a Dice." A true and correct copy of the '025 Patent is attached as **Exhibit 6**.

43.    Interblock d.o.o. owns the '025 Patent. Interblock USA, L.C. is the exclusive licensee of the '025 Patent.

44.    Interblock makes, uses, sells, and/or offers for sale ETG dice games including, e.g., Shoot to Win Craps and Dragon Sic-Bo. These products are each covered by at least one claim of the '025 Patent.

45.    The '025 Patent is valid, enforceable, and claims patentable subject matter.

46.    The '025 Patent is directed to improved gaming systems implementing dice, such as craps and sic-bo, and related methods. Systems and methods according to the '025 Patent enable games such as craps and sic-bo to be played without dealers while achieving sufficient durability and randomness and provide an improved user experience.

<strong>INTERBLOCK'S PATENTED GAMING SYSTEMS</strong>

47.    Interblock makes and sells gaming systems covered by the patents asserted in this Complaint. Specifically, Interblock makes and sells its innovative and highly successful dice games, which incorporate technologies covered by one or more claims of the '738 Patent and the '025 Patent.

48.    Interblock's dice games incorporating technologies covered by the '738

Patent and the '025 Patent include, e.g., Shoot to Win Craps and Dragon Sic-Bo.

49.    Interblock has spent many millions of dollars in development costs for its innovative dice games.

50.    Interblock's revenues in the United States for its innovative dice games is well into the tens of millions of dollars. Interblock's patented technologies have driven demand for and created a highly successful line of automated dice game products.

51.    Interblock has never licensed the '738 Patent or the '025 Patent to any third party.

52.    Interblock is the dominant provider of automated ETG dice games in the United States. Interblock intends to preserve its exclusivity in the market for automated dice games that practice claims of the '738 Patent and the '025 Patent.

**COUNT I: DIRECT INFRINGEMENT OF THE '738 PATENT**

***Against All Defendants***

53.    Interblock incorporates the foregoing paragraphs by reference as if fully set forth herein.

54.    Merkur and Spintec have announced that they will be exhibiting and launching their infringing automated dice games at the 2025 Las Vegas G2E, which takes place from October 6–9, 2025.

55.    Merkur and Spintec have imported into and have used in the United States infringing automated dice games, including, e.g., Charisma Craps and Charisma Sic-Bo. Merkur and Spintec have also commercially exploited the infringing automated dice games to casino operators and gaming distributors in the United States to undercut Interblock's profits and take Interblock's customers.

56.    Merkur's and Spintec's commercial efforts in advance of their formal launch of the automated dice games have already harmed Interblock by inducing Interblock's customers to postpone agreements for Interblock's patented automated dice games and risk further harm if Merkur and Spintec secure agreements to provide

automated dice games and displace Interblock's profits.

57.    Interblock is the dominant provider of automated dice games in the United States gaming industry. If Merkur and Spintec are permitted to launch their infringing automated dice games at the 2025 Las Vegas G2E, Interblock's market position will be irreparably harmed.

58.    Information about the operation of Merkur's and Spintec's infringing automated dice games, each of which feature an infringing dice generator, is publicly available. The examples of infringement are included with respect to an automated craps game but are equally applicable to any infringing automated dice game.

59.    The images below illustrate an example of an infringing automated dice game in the form of a craps electronic table game being promoted online. The craps game includes an automatic dice generator surrounded by player stations, as shown below:

 

60.    The dice generator on the other infringing automated dice games operates the same way. The generator drives a platform on which the dice rest. The platform moves up and down many times, which shakes the dice, and ultimately make the dice jump by a higher amount, mimicking the dice being thrown. The height that the dice jump when "thrown" varies from roll to roll.

61.    The Spintec automated dice games, including those in the Charisma line of products, infringe at least one claim of the '738 Patent.

62.    For example, claim 1 of the '738 Patent recites a gaming system.

63.    The Spintec automated dice games are gaming systems and feature versions of casino dice games such as craps and sic-bo.

64.    Claim 1 of the '738 Patent further recites a dice movable unit having a plurality of dice and a shaking device that causes the plurality of dice to roll.

65.    The Spintec automated dice games include a dice movable unit having a plurality of dice and a shaking device causing the plurality of dice to roll.



66.    Claim 1 of the '738 Patent further recites a plurality of game terminals, each of the plurality of game terminals having an operation device that a player can operate.

67.    The Spintec automated dice games include a plurality of game terminals,

each of the plurality of game terminals having an operation device that a player can operate.



68.    Claim 1 of the '738 Patent further recites a controller that executes processing of: (a) receiving bet end signals from the betted terminals among the plurality of game terminals, each of the bet end signals indicating betting in a corresponding betting terminal has ended.

69.    The Spintec automated dice games include a controller that executes processing of: (a) receiving bet end signals from the betted terminals among the plurality of game terminals, each of the bet end signals indicating betting in a corresponding betting terminal has ended. The Spintec automated dice games encourage players to finish their bets with a "Hurry Up" message and provide a visual indication when betting has ended.



70.    Claim 1 of the '738 Patent further recites a controller that executes processing of: (b) transmitting a first shaking motion start signal, which causes a first shaking motion by the shaking device to start, to the dice movable unit.

71.    The Spintec automated dice games include a controller that executes processing of: (b) transmitting a first shaking motion start signal, which causes a first shaking motion by the shaking device to start, to the dice movable unit.

| Dice on Stationary Platform | Dice While Dice Movable Unit Performs First Shaking Motion |
|---|---|
|  |  |

72.    Claim 1 of the '738 Patent further recites a controller that executes processing of: (c) transmitting a permission signal, which permits an operation by the operation device of a predetermined game terminal of the betted terminals, to the predetermined game terminal.

73.    The Spintec automated dice games include a controller that executes processing of: (c) transmitting a permission signal, which permits an operation by the operation device of a predetermined game terminal of the betted terminals, to the predetermined game terminal. When a game terminal receives a permission signal, that game terminal permits a player to actuate the shooter button to roll the dice.

**New shooter button**

A fun game feature where the shooter rotates clockwise among play stations or follows live game rules, continuing until a 7-out or point is hit.

74.    Claim 1 of the '738 Patent further recites a controller that executes processing of: (d) receiving an operation signal, which indicates that the operation device has been operated, from the predetermined game terminal.

75.    The Spintec automated dice games include a controller that executes processing of: (d) receiving an operation signal, which indicates that the operation device has been operated, from the predetermined game terminal. When actuated, the shooter button sends an operation signal to the controller indicating that the player has operated the shooter button.



76.    Claim 1 of the '738 Patent further recites a controller that executes processing of: (e) transmitting a second shaking motion start signal, which causes a second shaking motion by the shaking device to start, to the dice movable unit in response to the operation signal.

77.    The Spintec automated dice games include a controller that executes

processing of: (e) transmitting a second shaking motion start signal, which causes a second shaking motion by the shaking device to start, to the dice movable unit in response to the operation signal.

**Dice When Second Force Imparted**



78.    Claim 1 of the '738 Patent further recites wherein the dice movable unit: (b1) starts the first shaking motion in response [to] having received the first shaking motion start signal from the controller.

79.    The Spintec automated dice games include that the dice movable unit: (b1) starts the first shaking motion in response [to] having received the first shaking motion start signal from the controller.

| Dice on Dice Movable Unit Before Receiving Start Signal | Dice on Dice Movable Unit After Receiving Start Signal |
|---|---|
|  | |

80.    Claim 1 of the '738 Patent further recites wherein the dice movable unit: (e1) performs the second shaking motion, which has an amplitude larger than that of the first shaking motion, in response to having received the second shaking motion start signal from the controller.

81.    The Spintec automated dice games include that the dice movable unit (e1) performs the second shaking motion, which has an amplitude larger than that of the first shaking motion, in response to having received the second shaking motion start signal from the controller. The amplitude of the second shaking motion is visibly larger than the amplitude of the first shaking motion.



Dice being shaken in a first shaking motion with a first amplitude



Dice being shaken in a second shaking motion with a second amplitude larger than the first amplitude

82.    As shown, the Spintec automated dice games perform each limitation of at least claim 1 of the '738 Patent. The Spintec automated dice games thus infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '738 Patent.

83.    Merkur's and Spintec's infringement (including through their solicitation of sales of the automated dice games to casino operators and gaming distributors) has damaged Interblock and, if not enjoined from further manufacture, use, sale, offer for sale, or importation (including uses during the 2025 Las Vegas G2E), will irreparably harm Interblock, including by taking Interblock's hard-earned market share for automated dice

games incorporating Interblock's innovative, patented dice-throwing systems and methods.

84.    Merkur and Spintec, on the one hand, and Interblock, on the other, are direct competitors in the gaming market, including the specific market for electronic table games. Merkur and Spintec should be enjoined from further infringement of the '738 Patent. Interblock has spent years developing, refining, and patenting its proprietary dice-control systems and methods, which have been successfully implemented in Interblock's automated dice games. Should Merkur and Spintec be permitted to continue infringing Interblock's patented inventions, Interblock will be forced to compete against its own innovation over which it has the right to exclude others. Basic fairness should not allow this to continue, particularly at an early stage where Merkur and Spintec have not yet gained significant market share but are actively attempting to establish a sales pipeline for the infringing automated dice games in the hopes of taking market share from Interblock. Merkur's and Spintec's continued infringement will cause: (1) loss of business opportunities and market share; (2) significant and irreversible price erosion; (3) loss of customer goodwill and harm to Interblock's reputation; and (4) a diversion of resources from research and development. Moreover, the features patented in the '738 Patent drive demand for Interblock's automated dice games and ensure durable, sufficiently random dice games to be played without stickmen, boxmen, croupiers, or dealers.

85.    Additionally, as evidenced by its pre-launch solicitation of Interblock's customers—which have already led some customers to postpone deals with Interblock pending Merkur's and Spintec's launch at the 2025 Las Vegas G2E—Merkur and Spintec are aggressively attempting to take market share from Interblock through their offering of infringing gaming systems. Merkur and Spintec have already damaged Interblock, and allowing Merkur and Spintec to launch an infringing gaming system would unfairly and irreparably damage Interblock, including through a loss of market share and customers.

86.    Interblock's damages are difficult to quantify, rendering money damages

an inadequate remedy for Interblock. Interblock is the dominant provider of automated ETG dice games in the United States. Allowing Merkur and Spintec to infringe the '738 Patent would unfairly deny Interblock its right to exclude others.

87.     The public interest favors an injunction to maintain the status quo and protect Interblock's investment in developing new and innovating gaming technologies. The public interest further favors immediate injunctive relief to enforce the Patent Act's statutory right to exclude others from practicing Interblock's patented inventions that Interblock has successfully brought to market.

88.     Accordingly, the circumstances of this case warrant immediate injunctive relief barring Merkur and Spintec from further infringement of the '738 Patent. Merkur and Spintec should specifically be enjoined from exhibiting any infringing automated dice game at the 2025 Las Vegas G2E and thereafter pending trial.

89.     Merkur's and Spintec's infringement, particularly through their pre-launch solicitation of Interblock's customers and representation that their automated dice games are a cheaper alternative to Interblock's patented automated dice games, warrants a finding that this is an exceptional case, entitling Interblock to recover its attorneys' fees and expenses.

**COUNT II: DIRECT INFRINGEMENT OF THE '025 PATENT**

***Against All Defendants***

90.     Interblock incorporates the foregoing paragraphs by reference as if fully set forth herein.

91.     Merkur and Spintec have announced that they will be exhibiting and launching their infringing automated dice games at the 2025 Las Vegas G2E, which takes place from October 6–9, 2025.

92.     Merkur and Spintec have imported into and have used in the United States infringing automated dice games, including, e.g., Charisma Craps and Charisma Sic-Bo. Merkur and Spintec have also commercially exploited the infringing automated dice

games to casino operators and gaming distributors in the United States, including offering low pricing terms designed to undercut Interblock's profits and disrupt Interblock's sales.

93.    Merkur's and Spintec's commercial efforts in advance of their formal launch of the automated dice games have already harmed Interblock by inducing Interblock's customers to postpone agreements for Interblock's patented automated dice games and risk further harm if Merkur and Spintec secure agreements to provide automated dice games and displace Interblock's profits.

94.    Interblock is the dominant provider of automated dice games in the United States gaming industry. If Merkur and Spintec are permitted to launch their infringing automated dice games at the 2025 Las Vegas G2E, Interblock's market position will be irreparably harmed.

95.    Information about the operation of Merkur's and Spintec's infringing automated dice games, each of which feature an infringing dice generator, is publicly available. The examples of infringement are included with respect to an automated craps game but are equally applicable to any automated dice game.

96.    The images below illustrate an example of an infringing automated dice game in the form of a craps electronic table game being promoted online. The craps game includes an automatic dice generator surrounded by player stations, as shown below:



97.    The dice generator on the other infringing automated dice games operates the same way. The generator drives a platform on which the dice rest. The platform moves up and down many times, which shakes the dice, and ultimately make the dice jump by a higher amount, mimicking the dice being thrown. The height that the dice jump when "thrown" varies from roll to roll.

98.    The Spintec automated dice games, including those in the Charisma line of products, infringe at least one claim of the '025 Patent.

99.    For example, claim 1 of the '025 Patent recites a method for controlling movement of at least one dice.

100.    The Spintec automated dice games control the movement of dice by causing the dice to be shaken and then thrown to mimic a craps roll.

101.    Claim 1 of the '025 Patent further recites receiving data at a drive mechanism from a user-controlled input device indicative of a height the at least one dice should move upward.

102.    The Spintec automated dice games have a drive mechanism that shakes and throws the dice. The Spintec automated dice games each have one or more player stations constituting a user-controlled input device. On the craps game, the user-controlled

input device is a shooter button, as depicted below. At least one of the player stations communicates random generator data that indicates movement of the dice.



shooter button

103.    Claim 1 of the '025 Patent further recites causing through the drive mechanism a platform holding the at least one dice to move upward with a first force.

104.    The Spintec automated dice games have a drive mechanism that causes the platform holding the dice to oscillate up and down, shaking the dice as a result. The up-and-down oscillation moves the platform up as a result of a first force. The left picture below shows the dice resting on a stationary platform. The right picture shows the dice after the platform has begun its up-and-down oscillation and moved up at least once, resulting in the dice shaking.

| Dice on Stationary Platform | Dice While Platform Oscillates |
|---|---|
|  |  |

105.    Claim 1 of the '025 Patent further recites causing through the drive mechanism the platform to move downward either a first distance or over a first period of time.

106.    The Spintec automated dice games have a drive mechanism that causes the platform holding the dice to oscillate up and down, shaking the dice as a result. The up-and-down oscillation moves the platform downward. The downward movement moves the platform downward either a first distance or over a first period of time.

107.    Claim 1 of the '025 Patent further recites causing through the drive mechanism the platform to move upward with a second force, wherein the height that the dice move upward is controlled by selecting at least one of the first force, the first distance, the first period of time, or the second force.

108.    The Spintec automated dice games have a drive mechanism that causes the platform holding the dice to move upward with a second force. When the dice are thrown, the height is controlled through at least one of the first force, the first distance, the first period of time, or the second force. In the images below, a throw of the dice following the dice being shaken is depicted. The photographs show the platform suddenly moving up

by a larger amount to cause the throw because of a second force larger than the first force.

| Dice When Second Force Imparted | Dice Being Thrown |
|---|---|



109.    As shown, the Spintec automated dice games perform each limitation of at least claim 1 of the '025 Patent. The Spintec automated dice games thus infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '025 Patent.

110.    Merkur's and Spintec's infringement (including through their solicitation of sales of the automated dice games to casino operators and gaming distributors) has damaged Interblock and, if not enjoined from further manufacture, use, sale, offer for sale, or importation (including uses during the 2025 Las Vegas G2E), will irreparably harm Interblock, including by taking Interblock's hard-earned market share for automated dice games incorporating Interblock's innovative, patented dice-throwing systems and methods.

111.    Merkur and Spintec, on the one hand, and Interblock, on the other, are direct competitors in the gaming market, including the specific market for electronic table games. Merkur and Spintec should be enjoined from further infringement of the '025 Patent. Interblock has spent years developing, refining, and patenting its proprietary dice-control systems and methods, which have been successfully implemented in Interblock's automated dice games. Should Merkur and Spintec be permitted to continue infringing Interblock's patented inventions, Interblock will be forced to compete against its own innovation over which it has the right to exclude others. Basic fairness should not allow this to continue, particularly at an early stage where Merkur and Spintec have not yet gained significant market share but are actively attempting to establish a sales pipeline for the infringing automated dice games in the hopes of taking market share from Interblock. Merkur's and Spintec's continued infringement will cause: (1) loss of business opportunities and market share; (2) significant and irreversible price erosion; (3) loss of customer goodwill and harm to Interblock's reputation; and (4) a diversion of resources from research and development. Moreover, the features patented in the '025 Patent drive demand for Interblock's automated dice games and ensure durable, sufficiently random dice games to be played without stickmen, boxmen, croupiers, or dealers.

112.    Additionally, as evidenced by its pre-launch solicitation of Interblock's customers—which have already led some customers to postpone deals with Interblock pending Merkur's and Spintec's launch at the 2025 Las Vegas G2E—Merkur and Spintec are aggressively attempting to take market share from Interblock through their offering of infringing gaming systems. Merkur and Spintec have already damaged Interblock, and allowing Merkur and Spintec to launch an infringing gaming system would unfairly and irreparably damage Interblock, including through a loss of market share and customers.

113.    Interblock's damages are difficult to quantify, rendering money damages an inadequate remedy for Interblock. Interblock is the dominant provider of automated ETG dice games in the United States. Allowing Merkur and Spintec to infringe the '025

Patent would unfairly deny Interblock its right to exclude others.

114.    The public interest favors an injunction to maintain the status quo and protect Interblock's investment in developing new and innovating gaming technologies. The public interest further favors immediate injunctive relief to enforce the Patent Act's statutory right to exclude others from practicing Interblock's patented inventions that Interblock has successfully brought to market.

115.    Accordingly, the circumstances of this case warrant immediate injunctive relief barring Merkur and Spintec from further infringement of the '025 Patent. Merkur and Spintec should specifically be enjoined from exhibiting any infringing automated dice game at the 2025 Las Vegas G2E and thereafter pending trial.

116.    Merkur's and Spintec's infringement, particularly through their pre-launch solicitation of Interblock's customers and representation that their automated dice games are a cheaper alternative to Interblock's patented automated dice games, warrants a finding that this is an exceptional case, entitling Interblock to recover its attorneys' fees and expenses.

## PRAYER FOR RELIEF

Accordingly, Interblock respectfully requests that the Court enter judgment in its favor, granting it the following relief:

A.    Entry of a judgment that Merkur's and Spintec's planned exhibition of automated dice games at the 2025 Las Vegas G2E would infringe the '738 Patent and the '025 Patent under 35 U.S.C. § 271(a);

B.    Entry of a judgment that any manufacture, use, sale, offer for sale, and importation of Spintec's automated dice games infringe the '738 Patent and the '025 Patent under 35 U.S.C. § 271(a);

C.    Entry of a temporary restraining order, preliminary injunction, and permanent injunction enjoining Merkur and Spintec and their officers, directors, employees, agents, consultants, contractors, suppliers, distributors, affiliates, and all

others acting in privity with Merkur and Spintec from further infringement of the '738 Patent and the '025 Patent, including through sales, offers for sale, importation, use, or manufacture of the infringing Spintec automated dice games;

D.    Entry of an award to Interblock of damages to compensate it for the infringement of the '738 Patent and the '025 Patent by Merkur and Spintec, in an amount to be proven at trial, together with pre-judgment and post-judgment interest and costs, as fixed by the Court;

E.    Entry of a finding that, with respect to Merkur and Spintec, this case has been exceptional and awarding to Interblock its reasonable costs and attorney fees under 35 U.S.C. § 285;

F.    Entry of judgment that Merkur's and Spintec's infringement has been willful and trebling the award of damages to Interblock;

G.    Entry of judgment against Merkur and Spintec on all counts of this Complaint;

H.    Entry of an award to Interblock of its costs in this action; and

I.    A grant to Interblock of additional relief that the Court sees as just.

/ / /

/ / /

/ / /

1

**JURY DEMAND**

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Interblock demands

3 trial by jury on all issues so triable.

4    Dated: September 10, 2025.

5          SCHWARTZ LAW, PLLC

6          */s/ Samuel A. Schwartz*

7          Samuel A. Schwartz, Esq.
           Nevada Bar No. 10985

8          601 East Bridger Avenue
           Las Vegas, Nevada  89101

9

10         Kevin W. Kirsch (*pro hac vice* pending)
           Andrew E. Samuels (*pro hac vice* pending)

11         Mark S. Einsiedel (*pro hac vice* pending)
           Naomi Price (*pro hac vice* pending)

12         **Baker & Hostetler LLP**
           200 Civic Center Drive, Suite 1200

13         Columbus, OH  43215
           Telephone: 614.228.1541

14

15         Kevin P. Flynn (*pro hac vice* pending)
           **Baker & Hostetler LLP**

16         312 Walnut Street, Suite 3200
           Cincinnati, OH  45202

17         Telephone: 513.929.3400

18

19         Jeffrey J. Lyons (*pro hac vice* pending)
           **Baker & Hostetler LLP**

20         1201 N. Market Street, Suite 1407
           Wilmington, DE  19801

21         Telephone: 302.407.4220

22         *Attorneys for Plaintiffs*

23

24

25

26

27

28

35

# INDEX OF EXHIBITS

| # | Document |
|---|----------|
| 1 | Merkur and Spintec joint announcement of partnership |
| 2 | Press release regarding the Nevada Gaming Commission's approval of Merkur's acquisition of Gaming Arts LLC |
| 3 | Merkur's August 21, 2025 announcement regarding 2025 Las Vegas Global Gaming Expo |
| 4 | Website for Merkur's exhibitor details at the 2025 Las Vegas G2E |
| 5 | U.S. Patent No. RE46,738 |
| 6 | U.S. Patent No. 11,325,025 |
| 7 | Spintec's LinkedIn post regarding infringing Charisma ETGs |
| 8 | Spintec's LinkedIn post regarding infringing Charisma ETGs to be featured at the 2025 Las Vegas G2E at the Spintec-Merkur booth |